# EXHIBIT 1

E-filed in the Office of the Clerk
for the Business Court of Texas
11/12/2024 3:24 PM
Accepted by: Beverly Crumley
Case Number: 24-BC11A-0024

CAUSE NO. <u>24-BC11A-0024</u>

| | | |
|---|---|---|
| ISAAC ARNOLD, JR., ALISON R. | § | |
| BAUMANN, HUGH R. MARSHALL, | § | |
| CARROLL R. RAY, LILLIE ROBERTSON, | § | |
| CORBIN J. ROBERTSON, JR., | § | |
| WILHELMINA E. ROBERTSON, | § | |
| CHAMPION TRAYLOR III, | § | |
| WILHELMINA B. TRAYLOR, | § | |
| ROBERT BARNHART, AS TRUSTEE OF | § | |
| THE ROBERT J. BARNHART REVOCABLE | § | |
| TRUST, LEGACY TRUST COMPANY, N.A., | § | |
| AS TRUSTEE OF THE DOUGLAS B. | § | IN THE BUSINESS COURT |
| MARSHALL JR. NON-EXEMPT TRUST FOR | § | |
| DOUGLAS B. MARSHALL III, | § | |
| JOSEPH A. SCOTT, RUSSELL SCOTT III, | § | |
| ALEXANDER I. WRIGHT AND RICHARD E. | § | 11TH DIVISION |
| MONROE, JR., AS CO-TRUSTEES OF THE | § | |
| ALEXANDER I. WRIGHT 2006 GST TRUST, | § | |
| EMILY C.J. SIMMONS AND RICHARD E. | § | |
| MONROE, AS CO-TRUSTEES OF THE | § | FORT BEND COUNTY, TEXAS |
| OF THE EMILY C.J. SIMMONS 2006 GST | § | |
| TRUST, HANNAH C. SIMMONS AND | § | |
| RICHARD E. MONROE JR., AS | § | |
| CO-TRUSTEES OF THE HANNAH C. | § | |
| SIMMONS 2006 GST TRUST, AND | § | |
| ANDREW C. SCOTT, AS TRUSTEE OF THE | § | |
| ANDREW C. SCOTT 2006 GST TRUST | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | |
| | § | |
| BLUE RIDGE LANDFILL TX, LP D/B/A | § | |
| BLUE RIDGE LANDFILL | § | |
| | § | |
| *Defendant* | § | |

**PLAINTIFFS' ORIGINAL PETITION**

Plaintiffs Isaac Arnold, Jr., Alison R. Baumann, Hugh R. Marshall, Carroll R. Ray, Lillie Robertson, Corbin J. Robertson, Jr., Wilhelmina E. Robertson, Champion Traylor III, Wilhelmina B. Traylor, Robert Barnhart, as Trustee of the Robert J. Barnhart Revocable Trust, Legacy Trust Company, N.A., as Trustee of the Douglas B. Marshall Jr. Non-Exempt Trust for Douglas B. Marshall III, Joseph A. Scott, Russell Scott III, Andrew C. Scott, as Trustee of the Andrew C. Scott 2006 GST Trust, Alexander I. Wright, as Co-Trustee of the Alexander I. Wright 2006 GST Trust, Emily C.J. Simmons, as Co-Trustee of the Emily C.J. Simmons 2006 GST Trust, Hannah C. Simmons, as Co-Trustee of the Hannah C. Simmons 2006 GST Trust, and Richard E. Monroe, as Co-Trustee of the Alexander I. Wright 2006 GST Trust, Co-Trustee of the Emily C.J. Simmons 2006 GST Trust, and Co-Trustee of the Hannah C. Simmons 2006 GST Trust, file this Original Petition complaining of Defendant Blue Ridge Landfill TX, LP d/b/a Blue Ridge Landfill, and show as follows:

## I.    NATURE OF RELIEF SOUGHT

1.    This action arises out of a dispute regarding the amount of royalties owed to Plaintiffs for the disposal of solid waste at a landfill operated in Fort Bend County, Texas by Defendant Blue Ridge Landfill TX, LP d/b/a Blue Ridge Landfill ("Blue Ridge"). The result hinges on the construction of the parties' underlying Letter Agreement. The Letter Agreement entitles Plaintiffs to receive five percent of Blue Ridge's "Gate Revenues" from the "final disposal of solid waste in the sanitary landfill operated on the Property." Plaintiffs argue such language encompasses revenues resulting from waste disposal on the property Plaintiffs conveyed to Blue Ridge, and waste disposal on the adjacent tract subsequently acquired by Blue Ridge, which is still part of the same landfill.

2

2.      Blue Ridge contends revenue from the adjacent tract should not be included in the royalty calculations, and that it mistakenly included such revenues in past calculations resulting in an overpayment of $10 million since 2018. Blue Ridge expressed its intent to apply a $10 million credit to future royalty payments to address its voluntary overpayments, which Plaintiffs oppose. Blue Ridge also stopped paying Plaintiffs royalties owed for 2024 operations based on its limited, and incorrect, construction of the Letter Agreement.

3.      Plaintiffs bring this action seeking a declaratory judgment that: (i) Blue Ridge is not entitled to a credit against future royalties; (ii) Gate Revenues encompasses revenues received as a result of operations occurring throughout all properties and includes solid waste disposal on the adjacent tract because it is part of the same landfill; and (iii) Plaintiffs are entitled to royalties for the revenues resulting from waste disposal on the adjacent tract because it is part of the same landfill. Plaintiffs also sue for breach of contract as a result of Blue Ridge's failure to make quarterly royalty payments in excess of $1 million for waste disposal in 2024.

## II.    DISCOVERY LEVEL

4.      Plaintiffs request a Level 3 discovery control plan under Texas Rule of Civil Procedure 190.4.

## III.    PARTIES

5.      Plaintiff Isaac Arnold, Jr., is an individual residing in Texas.

6.      Plaintiff Alison R. Baumann is an individual residing in California.

7.      Plaintiff Hugh R. Marshall is an individual residing in Nevada.

8.      Plaintiff Carroll R. Ray is an individual residing in Texas.

9.      Plaintiff Lillie Robertson is an individual residing in Texas.

10.     Plaintiff Corbin J. Robertson, Jr. is an individual residing in Texas.

11.     Plaintiff Wilhelmina E. Robertson is an individual residing in Texas.

12.     Plaintiff Champion Traylor III is an individual residing in Texas.

13.     Plaintiff Wilhelmina B. Traylor is an individual residing in Texas.

14.     Plaintiff Robert Barnhart, as Trustee of the Robert J. Barnhart Revocable Trust, is an individual residing in Texas.

15.     Plaintiff Legacy Trust Company, N.A., as Trustee of the Douglas B. Marshall Jr. Non-Exempt Trust for Douglas B. Marshall III, is a national banking association with its principal place of business in Houston, Texas.

16.     Plaintiff Joseph A. Scott is an individual residing in Colorado.

17.     Plaintiff Russell Scott III is an individual residing in Alabama.

18.     Plaintiff Andrew C. Scott, as Trustee of the Andrew C. Scott 2006 GST Trust, is an individual residing in Colorado.

19.     Plaintiff Alexander I. Wright, as Co-Trustee of the Alexander I. Wright 2006 GST Trust, is an American citizen who permanently resides in the United Kingdom.

20.     Plaintiff Emily C.J. Simmons, as Co-Trustee of the Emily C.J. Simmons 2006 GST Trust, is an individual residing in New Jersey.

21.     Plaintiff Hannah C. Simmons, as Co-Trustee of the Hannah C. Simmons 2006 GST Trust, is an individual residing in Hawaii.

22.     Plaintiff Richard E. Monroe Jr., as Co-Trustee of the Alexander I. Wright 2006 GST Trust, Co-Trustee of the Emily C.J. Simmons 2006 GST Trust, and Co-Trustee of the Hannah C. Simmons 2006 GST Trust, is an individual residing in Texas.

23.     Defendant Blue Ridge Landfill TX, LP d/b/a Blue Ridge Landfill, is a Delaware limited partnership doing business in Texas. Defendant may be served with process by serving

its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

## IV.   JURISDICTION AND VENUE

24.    This Court has subject matter jurisdiction over this case pursuant to Texas Government Code Section 25A.004(d)–(e). The amount in controversy exceeds $10,000,000, excluding interest, statutory and exemplary damages, penalties, attorney's fees and costs. The case arises out of a qualified transaction and Plaintiffs seek a declaratory judgment and monetary relief greater than $1,000,000. The Court has jurisdiction over the parties and this dispute because the acts or omissions at issue occurred in Texas.

25.    Venue is proper in Fort Bend County and the Eleventh District pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(1) because a substantial part of the events or omissions supporting Plaintiffs' claims occurred in Fort Bend County.

## V.   FACTUAL BACKGROUND

### A.  The Letter Agreement and Additional Payments.

26.    In September 1985, Browning-Ferris, Inc. ("BFI") purchased approximately 598.583 acres of real property in Fort Bend County, Texas (the "Bessie West Property") for the development and operation of a landfill serving the Greater Houston Area. The purchase agreement provided that BFI would make certain "Additional Payments" to the sellers as added consideration for their conveyance of the Bessie West Property. The parties executed a separate Letter Agreement memorializing BFI's obligation to make Additional Payments to the sellers. Exhibit A, Letter Agreement.

5

27.    Plaintiffs are either parties to the Letter Agreement or successors-in-interest to the Letter Agreement's original parties (collectively, the "Royalty Owners"). Their ownership interests are reflected in the Division of Interest attached hereto as Exhibit B.

28.    Effective September 27, 1985, the Letter Agreement provides, in relevant part:

> Purchaser shall pay to Seller five percent (5%) of the Gate Revenues received by Purchaser from operation of a sanitary landfill on the Property ("Additional Payments). The phrase "Gate Revenues" means the revenues actually received by the Purchaser for final disposal of solid waste in the sanitary landfill operated on the Property, . . . Each Additional Payment shall be computed on the basis of Gate Revenues for each calendar quarter and shall become payable on or before the thirtieth (30th) day thereafter.

Ex. A at 1. The Letter Agreement states the Additional Payments obligation runs with the land, and that the Letter Agreement is "binding upon the parties hereto and their respective successors, heirs and assigns." Ex. A at 2.

29.    Following the sale closing, BFI commenced waste disposal operations on the Bessie West Property and began making the Additional Payments outlined in the Letter Agreement. The Additional Payments continued unabated for the next 38 years and exceeded $10 million.

**B. Blue Ridge Expands the Landfill at the Bessie West Property.**

30.    In 1993, BFI purchased the real property bordering the Bessie West Property's northern and western boundaries (the "Adjacent Tract"). In or around 2016, BFI's successor-in-interest, Blue Ridge, expanded its landfill on the Bessie West Property to the Adjacent Tract. Blue Ridge operates the landfill on both tracts under one permit, and the sole entrance to the landfill is located on the Bessie West Property.

31.    Following the commencement of waste disposal at the Adjacent Tract, Blue Ridge included revenues received from waste ultimately disposed on the Adjacent Tract in Blue Ridge's unilateral calculation of the Additional Payments. Blue Ridge included revenues from

6

waste entering the Bessie West Property and thereafter disposed on the Adjacent Tract in its calculation of the Additional Payments for approximately six years. Blue Ridge voluntarily paid such amounts without input or interference from the Royalty Owners.

### C. Blue Ridge Stops Making the Additional Payments and Notifies Royalty Owners Blue Ridge Is Entitled to a $10 Million Credit for Alleged Overpayments.

32.     Despite the ongoing operations and single landfill permit, by letter dated April 24, 2024, Blue Ridge notified the Royalty Owners that Blue Ridge had ceased disposal of solid waste on the Bessie West Property. Ex. C, Apr. 24th Letter. As a result, Blue Ridge would not make Additional Payments to the Royalty Owners until it resumed such disposal on the Bessie West Property. Ex. C. Additionally, Blue Ridge alerted the Royalty Owners that it may have paid Additional Payments that were not due under the Letter Agreement, and Blue Ridge had commenced an investigation into the alleged overpayments. Ex. C.

33.     On August 22, 2024, Blue Ridge notified the Royalty Owners that its investigation determined Blue Ridge had overpaid the Royalty Owners by $10 million. According to Blue Ridge, "Between 2018–2023, the Royalty Owners were paid $10 million for approximately 12.4 cubic yards that were disposed of on the Adjacent Tract. No royalty was due on waste that was not disposed on the Bessie Mae West Property." Exhibit D, Aug. 22nd Letter. Instead of seeking repayment, Blue Ridge proposed "applying a $10 million credit against future royalties whenever waste disposal operations resume on the Bessie Mae West Property." Ex. D. The Letter Agreement is silent regarding Blue Ridge's right to future credits as a result of overpayment, and the Royalty Owners did not agree to Blue Ridge's proposed $10 million credit.

34.     Further, Blue Ridge has not made any Additional Payments since January 19, 2024, even though it continues to dispose of solid waste in the sanitary landfill operated on the Bessie West Property. Blue Ridge's failure to make the quarterly Additional

Payments for Gate Revenues received in 2024 constitutes a breach of the Letter Agreement, and such payments total at least $1 million.

## VI.    CAUSES OF ACTION

35.    The Royalty Owners incorporate by reference paragraphs 1 through 34 as though set forth herein in their entirety in support of their causes of action.

### A. Declaratory Judgment

36.    Plaintiffs seek a declaratory judgment pursuant to Texas Civil Practice and Remedies Code Chapter 37. A controversy exists regarding the construction of the Letter Agreement, and the parties' rights and obligations under the Letter Agreement. Specifically, there is a controversy regarding the amounts Defendant owes Plaintiffs under the Additional Payments provision. Plaintiffs seek a declaratory judgment that:

(1) Defendant is not entitled to a $10 million credit against future Additional Payments owed to Plaintiffs for alleged past overpayments;

(2) Defendant operates a single sanitary landfill on the Bessie West Property and Adjacent Tract;

(3) The definition of Gate Revenues encompasses revenues received as a result of solid waste disposal on the Adjacent Tract; and

(4) Plaintiffs are entitled to Additional Payments for the revenues Blue Ridge receives as a result of solid waste disposal on the Adjacent Tract.

### B. Breach of Contract

37.    The Letter Agreement constitutes a valid and binding contract among Plaintiffs and Defendant. Plaintiffs performed under the Letter Agreement at all relevant times. Defendant breached the Letter Agreement by failing to make the Additional Payments owed for 2024. As a result of Defendant's breach, Plaintiffs have incurred damages in the amount of 5% of the revenues received by Defendant from operations on the landfill, which includes solid waste entering the Bessie West Property and being disposed of on the Adjacent Tract. Upon

8

information and belief, Plaintiffs' current damages for the unpaid Additional Payments total at least $1 million, which is exclusive of attorneys' fees, interest, and costs, for which Plaintiffs sue. Defendant's breach is ongoing, and the amounts owing by Defendant under the Letter Agreement are ongoing and continue to accrue.

## VII.    ATTORNEYS' FEES

38.    Plaintiffs have been required to retain counsel to represent its interests due to Blue Ridge's conduct and proposed future credit. Plaintiffs are entitled to an award of their attorneys' fees, expenses, and costs of court, under Texas Civil Practice & Remedies Code Section 37.009. Plaintiffs seek an award of such attorneys' fees, costs and expenses incurred in this litigation from Blue Ridge, as the Court deems equitable and just.

## VIII.    CONDITIONS PRECEDENT

39.    All conditions precedent to Plaintiffs' claims for relief have been performed, have been waived, or have occurred.

## IX.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant Blue Ridge Landfill TX, LP d/b/a Blue Ridge Landfill, be cited to appear and answer herein and that, upon final hearing or trial of this cause, Plaintiffs have final judgment against Defendant for:

    i.    A judicial declaration that:

       1.    Defendant is not entitled to a $10 million credit against future Additional Payments for alleged past overpayments;

       2.    Defendant operates a single sanitary landfill on the Bessie West Property and Adjacent Tract;

       3.    The definition of Gate Revenues encompasses revenues received as a result of solid waste disposal on the Adjacent Tract; and

       4.    Plaintiffs are entitled to Additional Payments for the revenues Blue Ridge receives as a result of solid waste disposal on the Adjacent Tract.

9

ii.    All past-due Additional Payments owed under the Letter Agreement in an amount established at trial;

iii.    pre-judgment and post-judgment interest;

iv.    attorneys' fees, expenses, and costs of court; and

v.    all other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**WINSTEAD PC**

By:   */s/ Kyle R. Watson*
Kyle R. Watson
State Bar No. 24047078
krwatson@winstead.com
Rusty Sewell
State Bar No. 24073590
rsewell@winstead.com
24 Waterway Avenue, Suite 500
The Woodlands, Texas 77380
(281) 681-5900
(281) 681-5901 (Facsimile)

- and –

Jennifer Moynahan
State Bar No. 24121027
jmoynahan@winstead.com
600 Travis Street, Suite 5200
Houston, Texas 77002
(713) 650-8300
(713) 650-2400 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT A

*r: 11/08/00*
*Original to 1985 BFI Royalty*
*FILE*
*CC: JAH, Glenn Francis*

## QUINTANA PETROLEUM CORPORATION

601 JEFFERSON STREET - CULLEN CENTER

HOUSTON, TEXAS

(713) 651-8600

PLEASE ADDRESS CORRESPONDENCE TO:
P. O. BOX 3331
HOUSTON, TEXAS 77253

October 30, 2000

Browning-Ferris, Inc.
Browning Ferris Industries, Ltd.
Attn: Mr. Herschel Sanders
5757A Oates Road
Houston, Texas 77078

Re:   "Additional Payments" BFI Landfill
       Fort Bend County, Texas

Gentlemen:

Reference is made to those Special Warranty Deeds effective September 27, 1985, from Mary Hugh Scott, et al to Browning-Ferris, Inc. conveying property in Fort Bend County, Texas, to BFI for use as a landfill. Exhibit B to those deeds subject the property to certain Permitted Encumbrances, number 11. of which is a Letter Agreement also dated September 27, 1985, providing for "Additional Payments" to the Sellers, to be made payable to Quintana Petroleum Corporation until such time as BFI is directed in writing to pay another single firm or corporation to receive such payments.

This letter is to serve as formal notice to Browning-Ferris, Inc. that all payments mailed after January 1, 2001, made to Sellers under the above referenced Deeds, including payments due for 4th quarter 2000, should be made payable to:

JEFFERSON REALTY COMPANY
600 Jefferson, Suite 350
Houston, Texas 77002

tax identification #76-0235921

To acknowledge your receipt of this letter, please date, execute and return to the undersigned one original of this letter, in the space provided below.

Yours truly,

QUINTANA PETROLEUM CORPORATION

By: _____
     J. M. Trotter, Executive Vice President

JEFFERSON REALTY COMPANY

By: _____
     Edward R. Naumes, President

RECEIVED this __3__ day of November, 2000.

BROWNING FERRIS INDUSTRIES, LTD.

By: _____
     Herschel Sanders

cc:     Attn: Jennifer, Accounts Payable
        AWIN MANAGEMENT, INC.
        c/o Allied Waste North Americas, Inc.
        c/o Browning Ferris Industries, Ltd.
        15880 No. Greenway-Hayden Loop, #100
        Scottsdale, Arizona 85260
        re: Vendor ID 1020758

LETTER AGREEMENT

WHEREAS, Mary Hugh Arnold Scott, et al (collectively the "Seller") and Browning-Ferris, Inc. (the "Purchaser"), entered into that certain Option Agreement dated as of the 9th day of March, 1981, as amended (the "Option Agreement"), pertaining to that certain tract of land located in Fort Bend County, Texas, more particularly described on Exhibit "A" attached hereto (the "Property");

WHEREAS, Section 4(b) of the Option Agreement provides for the payment by Purchaser of Additional Payments to Seller for the conveyance of the Property;

WHEREAS, the closing (the "Closing") of the sale of the Property by Seller to Purchaser contemplated by the Option Agreement has occurred effective as of the effective date hereof;

WHEREAS, Purchaser and Seller, pursuant to Section 4(b) of the Option Agreement, desire to set forth certain rights and agreements;

NOW, THEREFORE, for and in consideration of the mutual promises contained herein and the conveyance of the Property by Seller to Purchaser, the parties hereby agree as follows:

1.    As additional consideration for the Property and not as creation of a partnership, association or joint venture, Purchaser shall pay to Seller five percent (5%) of the Gate Revenues received by Purchaser from operation of a sanitary landfill on the Property ("Additional Payments").  The phrase "Gate Revenues" means the revenues actually received by Purchaser for final disposal of solid waste in the sanitary landfill operated on the Property, less any charge required to be collected at the sanitary landfill by Purchaser, which charge is in the nature of a tax or charge on or with respect to solid waste deposited in the sanitary landfill operated on the Property which must be passed on to any governmental agency (including, without limitation, sales tax or any surcharge for pollution control, but excluding income taxes, property taxes and the like).  Each Additional Payment shall be computed on the basis of Gate Revenues for each calendar quarter and shall become payable on or before the thirtieth (30th) day thereafter.  Purchaser shall not construct

on the Property any waste processing facility without the prior written consent of Seller, which shall not be unreasonably withheld. Purchaser shall in its sole discretion control and direct solid waste collection and disposal operations at the sanitary landfill in the same manner as it would have if it were under no obligation to make Additional Payments to Seller."

2.   The Additional Payments shall be paid by Purchaser to Seller by making such payment in the form of Purchaser's check made payable to Quintana Petroleum Corporation and mailing same to 601 Jefferson Avenue, Houston, Texas 77002 (Attention:  Treasurer) until Purchaser shall have received a direction in writing signed by each party included in Seller directing another single person, firm or corporation to receive such payments, to become payable from and after Purchaser's receipt of such direction and the address to which the payments may be forwarded.

3.   Notwithstanding anything to the contrary contained in any agreement among the parties, no vendor's lien (express or implied) or right of rescission is retained by Seller incident to or to secure any Additional Payments and all such vendor's lien or right of rescission is released and quitclaimed by Seller herein to Purchaser.

4.   Purchaser's obligation to pay the Additional Payments is a covenant running with the Property.

5.   This instrument shall be binding upon the parties hereto and their respective successors, heirs and assigns.

6.   No partnership or association is intended to be created under or on account of any provision in this Letter Agreement or the Option Agreement and none shall be inferred.

7.   Notwithstanding anything to the contrary contained in any agreement among the parties, in no event shall Purchaser or its successors or assigns be obligated to operate any landfill upon the Property, and any such obligation or requirement shall not be inferred from any provision in any agreement.

8.   This instrument may be executed in multiple counterparts.  Each such counterpart shall be deemed an original; however, all such counterparts shall constitute only one document.

EXECUTED the date set opposite each name below, but effective for all purposes as of _September 27, 1985_ .

_September 26, 1985_
(Date)

_Wilhelmina R. Morian_ _OK TRC_
WILHELMINA ROBERTSON MORIAN


_____
(Date)

MARY HUGH ARNOLD SCOTT


_____
(Date)

ISAAC ARNOLD, JR.


_____
(Date)

JOE BARNHART, TRUSTEE OF THE WILHELMINA BARNHART TRAYLOR MANAGEMENT TRUST, created by Trust Agreement dated April 1, 1977, between Wilhelmina Arnold Barnhart, as Settlor, and Joe Barnhart, as Trustee


_____
(Date)

JOE BARNHART, TRUSTEE OF THE ROBERT J. BARNHART MANAGEMENT TRUST, created by Trust Agreement dated April 1, 1977, between Robert J. Barnhart, as Settlor, and Joe Barnhart, as Trustee

-3-

8.    This instrument may be executed in multiple counterparts. Each such counterpart shall be deemed an original; however, all such counterparts shall constitute only one document.

EXECUTED the date set opposite each name below, but effective for all purposes as of _September 27, 1985_ .


_____          WILHELMINA ROBERTSON MORIAN
        (Date)


_____          MARY HUGH ARNOLD SCOTT
        (Date)


_____          ISAAC ARNOLD, JR.
        (Date)


_____          JOE BARNHART, TRUSTEE OF THE
        (Date)                     WILHELMINA  BARNHART  TRAYLOR
                                   MANAGEMENT TRUST, created by
                                   Trust Agreement dated April 1,
                                   1977,  between  Wilhelmina
                                   Arnold Barnhart, as Settlor,
                                   and Joe Barnhart, as Trustee


_____          JOE BARNHART, TRUSTEE OF THE
        (Date)                     ROBERT J. BARNHART MANAGEMENT
                                   TRUST,  created  by  Trust
                                   Agreement dated April 1, 1977,
                                   between Robert J. Barnhart, as
                                   Settlor, and Joe Barnhart, as
                                   Trustee

-3-

8. This instrument may be executed in multiple counterparts. Each such counterpart shall be deemed an original; however, all such counterparts shall constitute only one document.

EXECUTED the date set opposite each name below, but effective for all purposes as of _September 27, 1985_ .


_____    WILHELMINA ROBERTSON MORIAN
(Date)                                              OK 13LC


_____    MARY HUGH ARNOLD SCOTT
(Date)


_September 23, 1985_
(Date)                     ISAAC ARNOLD, JR.


_____    JOE BARNHART, TRUSTEE OF THE
(Date)                     WILHELMINA BARNHART TRAYLOR
                           MANAGEMENT TRUST, created by
                           Trust Agreement dated April 1,
                           1977, between Wilhelmina
                           Arnold Barnhart, as Settlor,
                           and Joe Barnhart, as Trustee


_____    JOE BARNHART, TRUSTEE OF THE
(Date)                     ROBERT J. BARNHART MANAGEMENT
                           TRUST, created by Trust
                           Agreement dated April 1, 1977,
                           between Robert J. Barnhart, as
                           Settlor, and Joe Barnhart, as
                           Trustee

-3-

8.   This instrument may be executed in multiple counterparts.  Each such counterpart shall be deemed an original; however, all such counterparts shall consti- tute only one document.

EXECUTED the date set opposite each name below, but effective for all purposes as of _September 27, 1985_ .

_____          WILHELMINA ROBERTSON MORIAN *w/c 73-c*
          (Date)


_____          MARY HUGH ARNOLD SCOTT
          (Date)


_____          ISAAC ARNOLD, JR.
          (Date)


_September 23, 1985_          X _____
          (Date)          JOE BARNHART, TRUSTEE OF THE
                              WILHELMINA BARNHART TRAYLOR
                              MANAGEMENT TRUST, created by
                              Trust Agreement dated April 1,
                              1977, between Wilhelmina
                              Arnold Barnhart, as Settlor,
                              and Joe Barnhart, as Trustee


_September 23, 1985_          _____
          (Date)          JOE BARNHART, TRUSTEE OF THE
                              ROBERT J. BARNHART MANAGEMENT
                              TRUST, created by Trust
                              Agreement dated April 1, 1977,
                              between Robert J. Barnhart, as
                              Settlor, and Joe Barnhart, as
                              Trustee

-3-

_Sept 25, 1985_
_____
(Date)

_Douglas B. Marshall_
_____
DOUGLAS B. MARSHALL, JR.

_____
(Date)

_____
HUGH ROY MARSHALL

_____
(Date)

_____
CORBIN J. ROBERTSON, JR.

_____
(Date)

_____
CARROLL ROBERTSON HOCHNER

_____
(Date)

_____
ALISON BAUMANN

_____
(Date)

_____
LILLIE ROBERTSON ROACH

"SELLER"

BROWNING-FERRIS, INC.

_9-27-85_
_____
(Date)

By _Thomas Langley_
_____

Name: _Thomas E. Langley_
        Its Vice President

"PURCHASER"

5DBC04/30
092085(2)

_____        DOUGLAS B. MARSHALL, JR.
        (Date)

_September 25, 1985_              _[signature]_
        (Date)                    HUGH ROY MARSHALL

_____        CORBIN J. ROBERTSON, JR.
        (Date)

_____        CARROLL ROBERTSON HOCHNER
        (Date)

_____        ALISON BAUMANN
        (Date)

_____        LILLIE ROBERTSON ROACH
        (Date)

                                        "SELLER"


                                 BROWNING-FERRIS, INC.

_9-27-85_____        By _[signature]_
        (Date)
                                 Name: _Thomas E. Langley_
                                        Its Vice President

                                        "PURCHASER"


5DBC04/30
092085(2)

-4-

_____                    DOUGLAS B. MARSHALL, JR.
        (Date)


_____                    HUGH ROY MARSHALL
        (Date)


_September 23, 1985_                        CORBIN J. ROBERTSON, JR.
        (Date)


_____                    CARROLL ROBERTSON HOCHNER
        (Date)


_____                    ALISON BAUMANN
        (Date)


_____                    LILLIE ROBERTSON ROACH
        (Date)

                                                    "SELLER"


                                           BROWNING-FERRIS, INC.

_9-27-85_                                  By _____
        (Date)
                                           Name: _Thomas E. Langley_
                                                Its Vice President

                                                    "PURCHASER"


5DBC04/30
092085(2)

-4-

_____     DOUGLAS B. MARSHALL, JR.
(Date)

_____     HUGH ROY MARSHALL
(Date)

_____     CORBIN J. ROBERTSON, JR.
(Date)

*September 23, 1985*         CARROLL ROBERTSON HOCHNER
(Date)

_____     ALISON BAUMANN
(Date)

_____     LILLIE ROBERTSON ROACH
(Date)

                                        "SELLER"


                              BROWNING-FERRIS, INC.

4-27-85                       By _____
(Date)                        Name: *Thomas F. Langley*
                                    Its Vice President

                                        "PURCHASER"

5DBC04/30
092085(2)

-4-

_____                    _____
        (Date)                             DOUGLAS B. MARSHALL, JR.


_____                    _____
        (Date)                             HUGH ROY MARSHALL


_____                    _____
        (Date)                             CORBIN J. ROBERTSON, JR.


_____                    _____
        (Date)                             CARROLL ROBERTSON HOCHNER


_____        9/26/85     _____
        (Date)                             ALISON BAUMANN


_____                    _____
        (Date)                             LILLIE ROBERTSON ROACH


                                                          "SELLER"


                                           BROWNING-FERRIS, INC.


    9-27-85                                By _____
    (Date)
                                           Name: Thomas E. Langley
                                                 Its Vice President


                                                       "PURCHASER"


5DBC04/30
092085(2)


-4-

_____           DOUGLAS B. MARSHALL, JR.
        (Date)


_____           HUGH ROY MARSHALL
        (Date)


_____           CORBIN J. ROBERTSON, JR.
        (Date)


_____           CARROLL ROBERTSON HOCHNER
        (Date)


_____           ALISON BAUMANN
        (Date)


_____           LILLIE ROBERTSON ROACH
        (Date)

                                        "SELLER"


                                   BROWNING-FERRIS, INC.

    9-27-85                        By
    _____                 _____
        (Date)                     Name: Thomas E. Langley
                                          Its Vice President


                                        "PURCHASER"


5DBC04/30
092085(2)


-4-

Exhibit "A"

Attached to and made a part of that
certain Letter Agreement
dated effective September 27 , 1985, among
Wilhelmina Robertson Morian, et al., as Seller, and
Browning-Ferris, Inc., as Purchaser

Being a 598.583 acre tract of land out of the
Franklin Hooper Survey, Abstract 198, Fort Bend County,
Texas; also being part of the Walcott and Seamans
Subdivision as recorded in Volume 5, Page 378 of the
Deed Records of Fort Bend County, Texas; said 598.583
acres tract of land being more particularly described
as follows:

BEGINNING at a found two-inch galvanized iron pipe for
corner at the southwest corner of the said Franklin
Hooper Survey;

THENCE North 00 deg. 41' 23" West with a fence line and
the west line of the Franklin Hooper Survey, 2870.71
feet to a found 1/2-inch iron pipe for corner;

THENCE North 00 deg. 44' 37" West with said fence line
and west line of the Franklin Hooper Survey, 1090.86
feet to a found 3/4-inch iron pipe for corner;

THENCE North 00 deg. 46' 41" West with said fence line
and West line of the Franklin Hooper Survey, 1356.68
feet to a found 3/4-inch iron pipe for corner;

THENCE North 79 deg. 54' 45" East along fence line,
3025.50 feet to a found 3/4-inch iron pipe for corner;

THENCE South 00 deg. 44' 09" East with a fence line,
997.91 feet to a found 3/4-inch iron pipe for corner;

THENCE North 89 deg. 16' 58" East with a fence line,
2867.68 feet to a found 1/2-inch iron rod for corner in
the West margin of the I. & G. N. Railroad right-of-way;

THENCE South 19 deg. 48' 00" West with said west
margin, 5139.19 feet to a found 1/2-inch iron rod for
corner in the south line of the Franklin Hooper Survey;

THENCE South 89 deg. 17' 12" West with a fence line and
the South line of the Franklin Hooper survey, 4051.34
feet to the PLACE OF BEGINNING, containing 598.583
acres of land, more or less.

5DBC04/28a
091985(1)

# EXHIBIT B

## BESSIE WEST LANDFILL ROYALTY DIVISION OF INTEREST

| Owners | DOI 2024 |
|---|---|
| ISAAC ARNOLD, JR | 11.111110% |
| ROBERT J BARNHART REVOCABLE TR | 5.555560% |
| CHAMP AND WILHELMINA B TRAYLOR | 5.555550% |
| DBM JR NON-EXEMPT TR FOR DBM III | 16.666670% |
| HUGH ROY MARSHALL | 16.666670% |
| WILHELMINA E ROBERTSON | 6.666660% |
| LILLIE ROBERTSON | 6.666670% |
| ALISON R BAUMANN | 6.666670% |
| CARROLL R RAY | 6.666670% |
| CORBIN J ROBERTSON JR | 6.666660% |
| JOSEPH A. SCOTT | 2.7777775% |
| RUSSELL SCOTT III | 2.7777775% |
| ALEXANDER I. WRIGHT 2006 GST TRUST | 1.38888875% |
| EMILY C.J. SIMMONS 2006 GST TRUST | 1.38888875% |
| HANNAH C. SIMMONS 2006 GST TRUST | 1.38888875% |
| ANDREW C. SCOTT 2006 GST TRUST | 1.38888875% |
| | 100.000000% |

# EXHIBIT C



**Beck | Redden** LLP

The Trial and Appellate Law Firm

1221 McKinney Street, Suite 4500
Houston, Texas 77010
Phone: 713.951.3700   Fax: 713.951.3720
**www.beckredden.com**

Troy Ford
+1 713 951 6222
tford@beckredden.com

April 24, 2024

Jefferson Realty Company
C/O Legacy Trust Company
1415 Louisiana Street, Suite 1900
Houston, Texas 77002-1353

RE:    Royalty Payments - Blue Ridge Landfill TX, LP, Fort Bend Tx, f//k/a BFI Landfill

To Whom it May Concern:

I am writing on behalf of Blue Ridge Landfill TX, LP ("Blue Ridge") regarding the Special Warranty Deeds effective September 27, 1985, from Mary Hugh Scott, et al to Browning-Ferris, Inc. that conveyed approximately 598.583 acres in Fort Bend County, Texas to BFI for use as a landfill ("the Property"). Pursuant to a Letter Agreement dated September 27, 1985, certain "Additional Payments" would be made for final disposal of solid waste on the Property. This letter is to inform you that solid waste is not currently being disposed of on the Property. As such, no Additional Payments will be made until such time as solid waste disposal resumes on the Property.

In addition, it has come to the attention of Blue Ridge that certain Additional Payments may have been made that were not due under the Letter Agreement. We are in the process of investigating these overpayments and will be in touch soon regarding same.

Very truly yours,

Troy Ford

TRF/am

# EXHIBIT D



1221 McKinney Street, Suite 4500
Houston, Texas 77010
Phone: 713.951.3700   Fax: 713.951.3720
www.beckredden.com

Troy Ford
+1 713.951.6222
tford@beckredden.com

August 22, 2024

Rebecca Dietz
Jefferson Realty Company
1415 Louisiana Street, Suite 1900
Houston, Texas 77002-1353

RE:    Royalty Payments - Blue Ridge Landfill TX, LP, Fort Bend Tx, f//k/a BFI Landfill

Dear Ms.Dietz:

As you know, we represent Blue Ridge Landfill TX, LP ("Blue Ridge").  This letter relates to certain royalty payments that were overpaid.

In order to provide an explanation of the circumstances surrounding the overpayment, some background information may be helpful.  The land on which the Blue Ridge landfill began operations was transferred via a Special Warranty Deeds effective September 27, 1985, from Mary Hugh Scott, et al to Browning-Ferris, Inc. that conveyed approximately 598.583 acres in Fort Bend County, Texas to BFI for use as a landfill ("the Bessie Mae West Property").

In September 1985, Blue Ridge entered into a Letter Agreement that called for certain "Additional Payments" to be made for disposal of waste on the Bessie Mae West Property conveyed by the deeds referenced above to the previous owners of that tract of land, hereinafter the "Royalty Owners." After the purchase of the Bessie Mae West Property, Blue Ridge purchased additional property adjacent to that tract "Adjacent Tract."  For your review, I have attached a map that shows the boundaries of the Bessie Mae West Property (in red) as well as the Adjacent Tract (in blue).

Between 2018-2023, the Royalty Owners were paid $10 million for approximately 12.4 cubic yards that were disposed of on the Adjacent Tract.  No royalty was due on waste that was not disposed on the Bessie Mae West Property.

To address this issue, Blue Ridge proposes not to seek the immediate return of the $10 million overpayment.  Instead, Blue Ridge proposes applying a $10 million credit against future royalties whenever waste disposal operations resume on the Bessie Mae West Property.

In order to track these credits, Blue Ridge will communicate to you, as representative of the Royalty Owners, each quarter the remaining yardage and the royalty dollar balance remaining.  In order to calculate the remaining tonnage, Blue Ridge will conduct monthly flyovers with airspace scans to calculate any usage of the Bessie Mae West Property.  Airspace yardage will then be converted to tonnage to apply the appropriate credit under the Letter Agreement.  The royalty, if any, will be calculated based on the current rate per ton and the credit would then be applied.

Page 2


     If you would like to meet with folks from Blue Ridge to ask questions, I am happy to set up such a meeting.  Likewise, if there are questions that I can answer I am glad to do so.


Very truly yours,

*Troy Ford*


Troy Ford


TRF/am


B|R